No. 4163

**Second Circuit**

(Second Division)

——

SMITH (for the Use of Exchange Bank) v. TOLER

——

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Granted.)
(May 4, 1932. Opinion and Decree on Rehearing.)

——

Phanor Breazeale and Hughes, of Natchitoches, attorneys for plaintiff, appellant.

- S. R. Thomas, of Natchitoches, attorney for defendant, appellee.

STEPHENS, J. This is a foreclosure proceeding, via ordinaria, instituted by G. P. Smith, for and on behalf of the Exchange Bank of Natchitoches, against T. B. Toler, wherein plaintiff seeks to recover the sum of $1,000, with interest and attorney's fees, alleging such amount to be due on a note given in representation of a portion of the purchase price of certain property purchased by the defendant from plaintiff. The plaintiff's petition with reference to said note reads as follows:

"The second note for the purchase price, to-wit: Fifteen Hundred ($1500) Dollars, was due and payable on January 1, 1928, with interest at eight per cent from its maturity until paid and ten per cent attorney's fees, if placed in the hands of an attorney for collection. To secure the payment of the said note due January 1, 1928, a vendor's lien and privilege and special mortgage was retained by petitioner and granted by the vendee on the property sold, and said note is paraphed 'Ne Varietur' by the Notary for identification with the act of sale.

"It was further agreed in such sale that there was a pending suit between the heirs of Dwyer and petitioner, that, should the plaintiffs in that suit be successful, then the sum of Five Hundred ($500) Dollars was to be deducted from the note and said note for $1500 was so endorsed. It appears that the decision in the Dwyer suit was against your petitioner and thus, under the terms of the deed and the endorsement on the note, the same should be credited with $500, leaving a balance due Toler on the note, of One Thousand ($1000) Dollars."

It is then alleged in the petition that prior to the maturity of the note it was pledged by Smith to the Exchange Bank.

The defendant, in his answer, admitted the purchase of the property by him, and alleged that the consideration was the sum of $6400 of which $600 was paid in cash; a mortgage held by the Federal Land Bank of New Orleans for the sum of $2700 was assumed by the vendee; and for the balance of the purchase price he executed two promissory notes, one for the sum of $1600, due and payable January 1, 1927, and one for the sum of $1500 due and payable January 1, 1928, both conditioned to bear

8 per cent per annum interest from maturity. He alleged payment of the first note in full. He further alleged an agreement that the last-mentioned note should be reduced by the sum of $500 in the event his vendor lost a suit then in contest with one John Dwyer, and that the balance thereof might be paid on its due date by sufficient timber, if still on the land sold.

Defendant further answered, alleging that a short time after the execution of the deed he advised his vendor, G. P. Smith, plaintiff herein, that he desired that the note for $1500 be extinguished and paid by the timber on the land, none of which had been cut by defendant, in accordance with the agreement contained in the deed; and that the said Smith accepted said timber and cut and hauled, or caused to be cut and hauled, from said land, a certain portion thereof, which was so taken and received in compliance with the agreement contained in the deed above referred to. Defendant further alleged that the timber situated on the land belonged to G. P. Smith, who had exercised ownership thereof, and that said Smith had the right of ingress and egress at all times to cut and remove the same, and that such right was extended to the Exchange Bank if it were the holder or the pledgee of the note.

Defendant prayed in reconvention that the note sued on, having been extinguished, should be canceled, and that any evidence thereof should be erased from the mortgage record of Natchitoches parish.

A trial of the case resulted in a judgment rejecting plaintiff's demands and ordering the mortgage given to secure the payment of the note sued on canceled and erased. From the judgment so rendered, the plaintiff prosecutes this appeal.

On October 23, 1926, G. P. Smith sold to T. B. Toler certain property, real and personal, for the recited consideration of $6,400, payable as follows: $600 cash; the assumption by the vendee of a $2,700 mortgage held by the Federal Land Bank of New Orleans; and two notes, one for the sum of $1,600 due January 1, 1927, and one for the sum of $1,500 due January 1, 1928.

It is conceded that the defendant has discharged his obligations arising from the transaction promptly as they matured, with the exception of the payment of the $1,000, representing the balance due on the $1,500 note; and his position as to that amount, as set up in his answer, is that it has been extinguished by the transfer by him and the acceptance by the plaintiff of the timber on the land sold.

Pertinent facts developed during the trial of the case are as follows: A few weeks after the sale was made, the defendant, Toler, advised the plaintiff, Smith, that he would expect him to take the timber on the land in payment of the note of $1,500; that, repeatedly thereafter, both before and after the maturity of the note on January 1, 1928, he requested the plaintiff to cut and remove the timber from the property. That this was the position of the defendant with reference to the exercise of his option to pay in timber or money was admitted by the plaintiff in his testimony: "He told me he wanted me to take the timber and I told him I couldn't take it." That, notwithstanding this attitude, as indicated by his attorney, the plaintiff, in recognition of defendant's rights under the agreement, treated the timber as his own. He sold more than 12,000 feet of the timber to Mr. Breedlove at $3 per thousand, and made some effort to sell more of it to another person. The defendant has never cut any of the timber, but has maintained consistently that the timber belonged to plaintiff, and should be cut and removed by him in order that he, the defendant,

might "clear" the land. On June 20, 1929, the defendant registered a letter to the plaintiff in which he demanded the surrender of the note herein sued on. This suit was instituted on the note more than eighteen months thereafter.

The case must turn upon the construction and legal effect of the stipulation in the deed with reference to the payment of the note sued on, to-wit: "This note may be paid on its due date by sufficient timber returned to vendor if still on the land and not cut off, if cut must be paid in cash."

The counsel for the plaintiff contends that the stipulation is vague and ambiguous; that it contains a potestative condition, in that it imposes no obligation on the vendor, and that its binding effect is optional as to the vendee; and that, if it grants an option to the vendee, that option was not timely exercised.

It seems to us that the stipulation conveys a very definite meaning, and is free from ambiguity, and does not contain a potestative condition. The deed conveyed the land and timber thereon. The stipulation granted the vendee the right to pay a portion of the purchase price, which was represented by a note, by re-transferring all of the timber on the land to the vendor, or to pay the note in cash at his option. The stipulation, which is clearly an integral part of the contract of sale, obligates the vendor to receive all of the timber, if not cut, in payment of the note, or cash at the option of the vendee. The question as to what is meant by "sufficient timber" does not arise, as all of the timber is yet on the land except that cut by the vendor pursuant to his agreement to receive it in payment of the note. Mr. Dismukes, the attorney who drew the contract and wrote the stipulation under consideration, and who testified for the plaintiff, stated that Mr. Smith, the vendor, particularly wanted the provision placed in the agreement in order that the note might be paid with the timber that was on the property.

A note, of course, is ordinarily payable in money, but it is well recognized that the creditor may enter into a binding agreement to permit the debtor, at his option, and for his benefit, to extinguish an obligation by the transfer of something of value, or by payment in money.

Knowledge that the defendant would exercise his option to pay the note in timber was timely conveyed to the plaintiff, and the plaintiff, in acknowledgment thereof, actually exercised the rights of ownership by cutting and selling some of the timber and receiving the consideration therefor.

We find the following in Corpus Juris, Payment, p. 608, par. 39:

"While payment is ordinarily required to be made in money, it may, when so agreed, either expressly or by implication, or when the·creditor so consents, be made by furnishing, transferring, or delivering anything of value; and even in the absence of such agreement or consent, if payment in money actually results from the medium transferred or delivered to the creditor, the debt is extinguished to the extent of such payment. Ordinarily, an agreement for payment other than in money is presumed to be made in favor of the debtor, and he has the option of paying the debt either in the medium specified or in money of equal value; but after the time for payment has passed the debt is payable only in money, in the absence of the creditor's consent to receive something else.

"Where it is agreed that payment may be made by assignment or transfer of property other than money, the debtor must do what is necessary to transfer such interest in the property as to enable the creditor to obtain the beneficial ownership thereof, and if he fails to do so he remains liable on the debt."

The plaintiff does not pray, in the alter-

native, to be recognized as the owner of the timber, but we think he is entitled to such judgment under the prayer for general and equitable relief.

Article 7 of defendant's answer reads as follows:

"Further answering said petition your defendant shows that the timber situated on the land referred to belongs to G. P. Smith, who has exercised ownership thereof, and that he has had the right of ingress and egress at all times to cut and remove the same; and that he now has the right of ingress and egress to cut and remove the same, and that the said Exchange Bank, if the holder or pledgee of said note, is hereby granted and conferred the right, to enter in and upon said property, and to cut and remove therefrom the timber which was taken by the said plaintiff in payment and extinguishment on the note sued on."

The defendant has done everything in his power to vest title and ownership of the timber in plaintiff except to tender him a formal deed. That such tender would have been in vain is unquestionable. As the plaintiff has exercised the rights of ownership and possession, and no innocent third person's interest is affected, we feel justified, in view of the above statement of the defendant, and the evidence adduced on the trial, and in the interests of an equitable disposition of the case, in decreeing the plaintiff the owner of the timber.

As the note sued on is a mortgage note identified with the act of sale and mortgage, and also bears the same stipulation with reference to the timber upon the back thereof that appears in the deed, the Exchange Bank of Natchitoches, pledgee, is not a holder in due course, but accepted the note with full knowledge of the rights of the parties, and holds it subject to the equities existing between them, and cannot therefore be considered an innocent third person.

For which reasons we are of the opinion that the judgment should be amended so as to recognize the plaintiff as the owner of the timber on the land described in plaintiff's petition, with the right of ingress and egress thereon for a reasonable time to effect its removal, and that the judgment, as amended, should be affirmed, and it is so ordered.

---

## ON REHEARING

TALIAFERRO, J. Plaintiff, as grounds for rehearing, assigns the following, which he claims were errors in the court's original opinion, 137 So. 620: (1) That the judgment is not conclusive in that no time limit was provided for the removal of the timber by plaintiff from defendant's land; (2) that the court failed to determine the meaning and significance of the word "sufficient" in the clause in the act of sale and mortgage; (3) that since the property, both land and timber, is incumbered with a prior first mortgage in favor of a third party, the Federal Land Bank, defendant could not give a clear title to the timber; that it would be useless for plaintiff to accept the timber thus incumbered.

In our original opinion, plaintiff was decreed to be "the owner of the timber on the land described in plaintiff's petition, with the right of ingress and egress thereon for a reasonable time to effect its removal." No time limit was fixed in which to remove the timber, and none was asked.

As to the meaning of the word "sufficient" in the act of sale, our former decree makes it plain that, by construing together the language used in the deed and that used on the note with testimony, unobjected to, of the witnesses, particularly that of plaintiff's own witness, Mr. Dismukes, the notary who passed the deed, as well as defendant and even plaintiff himself, reference was had to the timber as a whole so long as defendant did not remove any. The writing on the note does not embrace the word "sufficient" or words "suffi-

cient timber." It uses the expression: "See deed and mortgage for further stipulation that this note may be paid by return of timber if on the land at due date, if timber cut off before that time, note must be paid in cash when due."

Mr. Dismukes stated the meaning, as he understood it, to be "* * * that the note might be paid with the timber that was on the property."

Mr. Dismukes was asked by plaintiff's own counsel:

"Q. What is the meaning of the word sufficient?
"A. There may have been some portion of the timber cut by Mr. Toler, and if he cut the timber of course he would have to pay the proportionate part of the note in cash for the timber cut. If he cut the timber there would not be any timber to pay the note. And if he did not—"

Here the witness was apparently interrupted by counsel asking the question:

. "Q. Then if it was only worth originally $100.00?
"A. Mr. Smith thought it was well worth $1500.00."

We submit that nothing could be made plainer than was here shown that it was not only the intention of the parties that it was the timber as a whole which was to be given in payment of the note, in event defendant so elected, and that plaintiff himself placed a value on it as being equal to the amount called for by the note.

Counsel complains that defendant was not bound; that the contract evinced by the deed contained a potestative condition, and constituted a "nudum pactum." We cannot agree with the learned counsel. Defendant was most solemnly bound to pay. If he did not pay in timber, he had to pay in cash. Counsel confuses defendant's right to elect or choose as to the manner of payment with his obligation to pay. There was no escape from paying;

certainly none within his power to command.

The questions of tender and of giving plaintiff a clear title to the timber are more difficult ones. Defendant apparently did everything short of making a legal tender of title. Under all of the circumstances, both as to the actions of plaintiff and defendant, can it be said that defendant was relieved of making such tender? After reviewing the pleading and testimony and the law on the subject, we are inclined to adhere to our original conclusion that he was. In the first place, plaintiff had signed the deed, thereby binding himself to each of its covenants. He was completely obligated to receive the timber back as defendant's right was to return it. Defendant informed plaintiff soon after the deed was passed, and long before the note became due, of his decision to return the timber in settlement of the note, and told plaintiff to take the timber. Soon thereafter plaintiff sold Mr. Breedlove some of the timber doubtless by reason of Toler's communication, thereby accepting the timber and acquiescing in the manner in which Toler had offered it. Plaintiff did not hesitate or refuse to accept; nor did he even intimate that he wanted a deed from defendant, or that he would require the title cleared of the Federal Land Bank's mortgage. He sold to Breedlove in the same manner as defendant had returned to him without any written deed, and, moreover, Breedlove cut and removed what he bought. He tried to sell the balance later, never did refuse the timber for any reason whatever, gave defendant permission to cut and deaden a few trees, inclosed by fence, in order that defendant might do some clearing, and, in fact, exercised complete ownership over the timber, whereas defendant discontinued the exercise of ownership. Moreover, plaintiff made no demand whatever for payment of the note until shortly before the suit was filed, which

was over four years after he had been offered the timber and his exercise of ownership had begun, and over three years after the note fell due. Plaintiff, we think, cannot now be heard to complain at defendant's failure to make a formal tender of title, in view of these circumstances, and after he has lulled defendant into a state of security by accepting and exercising ownership of the timber. It is when the creditor refuses to receive his payment that the debtor may make him a legal tender, under the codal article (Civ. Code, art. 2167), which provides for legal tender. Clearly no legal tender is contemplated under circumstances such as are presented in this case, and we therefore adhere to our former ruling on this point.

After further study, however, we now think that plaintiff should not be required to accept the timber back unless and until the title is freed from the $2,700 mortgage held by the Federal Land Bank against it. While there was no express stipulation by the parties in their covenant to this effect, we think that such was contemplated by them, and we so construe it. It is suggested by counsel for defendant that no difficulty would be experienced in securing from the Federal Land Bank a release of the timber. It is also suggested that defendant is perfectly willing for the court to specify a reasonable time limit up to as much as five years if plaintiff may be allowed to cut and remove the timber. The timber referred to, we take it, contemplated such on the land as was merchantable.

Our former decree is therefore amended by now decreeing that defendant shall within ninety days after this judgment becomes final, tender to plaintiff a title to the merchantable timber growing, standing, or being upon the lands in question, which shall be free from the $2,700 mortgage resting against it in favor of the Federal Land Bank, either by securing a release from said bank or by defendant furnishing to plaintiff bond with good and valid surety indemnifying plaintiff from having to respond to or pay the amount of said mortgage debt or any part thereof by reason of said timber. It is further decreed that, upon defendant's making said tender of title, within the period named, thus cleared or secured, the note herein sued on shall be deemed as fully paid and satisfied, and the defendant entitled to have the vendor's lien and mortgage with which the note is identified canceled and erased from the mortgage records in so far as affected by said note, otherwise defendant shall pay the plaintiff for the use and benefit of the Exchange Bank of Natchitoches, in so far as its interest may appear, the full amount prayed for on the note, viz., $1,000, with 8 per cent per annum interest thereon from January 1, 1928, until paid, and 10 per cent additional as attorney's fees thereon, with full recognition and enforcement of plaintiff's vendor's lien and special mortgage upon the entire property, together with all costs of both courts. In event, however, defendant shall make the tender, clear the title, or secure plaintiff, as herein decreed, he shall be absolved from the payment of any costs, but plaintiff shall pay all of same in both courts.

It is further ordered and decreed that, looking to plaintiff's right to the timber and its removal in event he becomes absolute owner under title, he shall be deemed as owner of all of the merchantable timber growing, standing, and being upon said lands, and he shall have free ingress and egress upon and across same for his employees, teams, and vehicles for a period of three years from the date this judgment becomes final, in which to cut and remove said timber.

It is further ordered that, as thus amended, our former decree be reinstated and reaffirmed.