## SMITH, for Use and Benefit of EXCHANGE BANK OF NATCHITOCHES v. TOLER.

### No. 4163.

Court of Appeal of Louisiana, Second Circuit, Second Division.

May 4, 1932.

For former opinion, see 137 So. 620.

Phanor Breazeale, of Natchitoches, for appellant.

S. R. Thomas, of Natchitoches, for appellee.

'TALIAFERRO, J.

Plaintiff, as grounds for rehearing, assigns the following, which he claims were errors in the court's original opinion, 137 So. 620: (1) That the judgment is not conclusive in that no time limit was provided for the removal of the timber by plaintiff from defendant's land; (2) that the court failed to determine the meaning and significance of the word "sufficient" in the clause in the act of sale and mortgage; (3) that since the property, both land and timber, is incumbered with a prior first mortgage in favor of a third party, the Federal Land Bank, defendant could not give a clear title to the timber; that it would be useless for plaintiff to accept the timber thus incumbered.

In our original opinion, plaintiff was decreed to be "the owner of the timber on the land described in plaintiff's petition, with the' right of ingress and egress thereon for a reasonable time to effect its removal." No time limit was fixed in which to remove the timber, and none was asked.

As to the meaning of the word "sufficient" in the act of sale, our former decree makes it plain that, by construing together the language used in the deed and that used on the note with the testimony, unobjected to, of the witnesses, particularly that of plaintiff's own witness, Mr. Dismukes, the notary who passed the deed, as well as defendant and even plaintiff himself, reference was had to the timber as a whole so long as defendant did not remove any. The writing on the note does not embrace the word "sufficient" or words "sufficient timber." It uses the expression: "See deed and mortgage for further stipulation that this note may be paid by return of timber if on the land at due date, if timber cut off before that time note must be paid in cash when due."

Mr. Dismukes stated the meaning, as he understood it, to be " * * * that the note might be paid with the timber that was on the property."

Mr. Dismukes was asked by plaintiff's own counsel: "Q. What is the meaning of the word sufficient? A. There may have been some portion of the timber cut by Mr. Tolar, and if he cut the timber of course he would have to pay the proportionate part of the note in cash for the timber cut. If he cut the timber there would not be any timber to pay the note. And if he did not—"

Here the witness was apparently interrupted by counsel asking the question: "Q. Then if it was only worth originally $100.00? A. Mr. Smith thought it was well worth $1500.-00."

We submit that nothing could be made plainer than was here shown that it was not only the intention of the parties that it was the timber as a whole which was to be given in payment of the note, in event defendant so elected, and that plaintiff himself placed a value on it as being equal to the amount called for by the note.

Counsel complains that defendant was not bound; that the contract evinced by the deed contained a potestative condition, and constituted a "nudum pactum." We cannot agree with the learned counsel. Defendant was most solemnly bound to pay. If he did not pay in timber, he had to pay in cash. Counsel confuses defendant's right to elect or choose as to the manner of payment with his obligation to pay. There was no escape from paying; certainly none within his power to command.

The questions of tender and of giving plaintiff a clear title to the timber are more difficult ones. Defendant apparently did everything short of making a legal tender of title. Under all of the circumstances, both as to the actions of plaintiff and defendant, can it be said that defendant was relieved of making such tender? After reviewing the pleading and testimony and the law on the subject, we are inclined to adhere to our original conclusion that he was. In the first

place, plaintiff had signed the deed, thereby binding himself to each of its covenants. He was completely obligated to receive the timber back as defendant's right was to return it. Defendant informed plaintiff soon after the deed was passed, and long before the note became due, of his decision to return the timber in settlement of the note, and told plaintiff to take the timber. Soon thereafter plaintiff sold Mr. Breedlove some of the timber doubtless by reason of Toler's communication, thereby accepting the timber and acquiescing in the manner in which Toler had offered it. Plaintiff did not hesitate or refuse to accept; nor did he even intimate that he wanted a deed from defendant, or that he would require the title cleared of the Federal Land Bank's mortgage. He sold to Breedlove in the same manner as defendant had returned to him without any written deed, and, moreover, Breedlove cut and removed what he bought. He tried to sell the balance later, never did refuse the timber for any reason whatever, gave defendant permission to cut and deaden a few trees, inclosed by fence, in order that defendant might do some clearing, and, in fact, exercised complete ownership over the timber, whereas defendant discontinued the exercise of ownership. Moreover, plaintiff made no demand whatever for payment of the note until shortly before the suit was filed, which was over four years after he had been offered the timber and his exercise of ownership had begun, and over three years after the note fell due. Plaintiff, we think, cannot now be heard to complain at defendant's failure to make a formal tender of title, in view of these circumstances, and after he has lulled defendant into a state of security by accepting and exercising ownership of the timber. It is when the creditor refuses to receive his payment that the debtor may make him a legal tender, under the codal article (Civ. Code, art. 2167), which provides for legal tender. Clearly no legal tender is contemplated under circumstances such as are presented in this case, and we therefore adhere to our former ruling on this point.

After further study, however, we now think that plaintiff should not be required to accept the timber back unless and until the title is freed from the $2,700 mortgage held by the Federal Land Bank against it. While there was no express stipulation by the parties in their covenant to this effect, we think that such was contemplated by them, and we so construe it. It is suggested by counsel for defendant that no difficulty would be experienced in securing from the Federal Land Bank a release of the timber. It is also suggested that defendant is perfectly willing for the court to specify a reasonable time limit up to as much as five years if plaintiff may be allowed to cut and remove the timber. The timber referred to, we take it, contemplated such on the land as was merchantable.

Our former decree is therefore amended by now decreeing that defendant shall within ninety days after this judgment becomes final tender to plaintiff a title to the merchantable timber growing, standing, or being upon the lands in question, which shall be free from the $2,700 mortgage resting against it in favor of the Federal Land Bank, either by securing a release from said bank or by defendant furnishing to plaintiff bond with good and valid surety indemnifying plaintiff from having to respond to or pay the amount of said mortgage debt or any part thereof by reason of said timber. It is further decreed that, upon defendant's making said tender of title, within the period named, thus cleared or secured, the note herein sued on shall be deemed as fully paid and satisfied, and the defendant entitled to have the vendor's lien and mortgage with which the note is identified canceled and erased from the mortgage records in so far as affected by said note, otherwise defendant shall pay the plaintiff for the use and benefit of the Exchange Bank of Natchitoches, in so far as its interest may appear, the full amount prayed for on the note, viz. $1,000, with 8 per cent. per annum interest thereon from January 1, 1928, until paid, and 10 per cent. additional as attorney's fees thereon, with full recognition and enforcement of plaintiff's vendor's lien and special mortgage upon the entire property, together with all costs of both courts. In event, however, defendant shall make the tender, clear the title, or secure plaintiff, as herein decreed, he shall be absolved from the payment of any costs, but plaintiff shall pay all of same in both courts.

It is further ordered and decreed that, looking to plaintiff's right to the timber and its removal in event he becomes absolute owner under title, he shall be deemed as owner of all of the merchantable timber growing, standing, and being upon said lands, and he shall have free ingress and egress upon and across same for his employees, teams, and vehicles for a period of three years from the date this judgment becomes final, in which to cut and remove said timber.

It is further ordered that, as thus amended, our former decree be reinstated and reaffirmed.